OPINION JUDGMENT ENTRY
{¶ 1} Appellants Michael and Tabitha Felgenhauer appeal from a grant of permanent custody by the Tuscarawas County Court of Common Pleas, Juvenile Division, in favor of appellee Tuscarawas County Department of Jobs and Family Services ("TCDJFS").
 {¶ 2} Appellants assign two errors to the trial court:
 {¶ 3} "The trial court's judgment awarding permanent custody of the minor children Kitana, Sonya and Charity Felgenhauer to the tuscarawas county job and family services was contrary to and against the manifest weight of the evidence as there was insufficient relevant, competent, or credible evidence to sustain such a determination.
 {¶ 4} "The tuscarawas county job and family services failed to prove by clear and convincing evidence that reunification of kitana, sonya and charity with their parents was not possible as the facts established at the permanent custody hearing did not create a firm belief or conviction that the children should not be returned to the home of their parents."
 {¶ 5} Appellants are the parents of Kitana Felgenhauer (d.o.b. 04/11/1998), Sonya Felgenhauer (d.o.b. 04/10/2000), and Charity Felgenhauer (d.o.b. 06/11/2001).
 {¶ 6} Since the birth of Kitana, there have been multiple reports to TCDJFS concerning the care of these children. Questionable housing, unsanitary conditions, extremely poor hygiene of the children, lack of medical care, and unemployment have been some of those concerns. MRDD, TOTS, Starlite, Early Intervention, and TCDJFS have all worked extensively with these children.
 {¶ 7} The complaint alleging the children were neglected and/or dependent was filed by the TCDJFS on November 6, 2002. An initial hearing on the complaint took place on November 20, 2002, at which time the children were maintained in the custody of their parents under an order of protective supervision to appellee. Adjudicatory and Dispositional hearings were conducted on January 2, 2003. At that time, appellants stipulated to a dependency finding by the court regarding all three children. The children again were maintained in the custody of their parents under an order of protective supervision. Additionally, a case plan was adopted providing numerous services for the parents to address the areas of concern from the agency.
 {¶ 8} At a review hearing conducted on April 9, 2003, appellees requested temporary custody of the three minor children. That request was denied by the court, but the matter of the agency's request for custody was set for an additional hearing on April 24, 2003. The children remained in the placement of their parents during this time period.
 {¶ 9} An emergency shelter care hearing took place on May 1, 2003, at which time appellee was awarded temporary custody of the children. The matter was re-heard in the presence of appellants on May 5, 2003, at which time the court affirmed its previous decision to remove the children from the appellants' placement and grant temporary custody to the appellee.
 {¶ 10} On September 22, 2003, appellee filed a request with the court asking that the previous disposition of temporary custody to appellee be modified to permanent custody. The matter was heard before Judge Linda A. Kate on January 23, 2004 and concluded on February 25, 2004.
 {¶ 11} By judgment entry filed February 27, 2004, the Tuscarawas County Juvenile Court granted the motion of appellee for permanent custody of all three children.
 I, II {¶ 12} Because appellants' first and second assignments of error are interrelated, we shall address said assignments of error together.
 {¶ 13} In their first assignment of error, appellants maintain the trial court's decision granting permanent custody is against the manifest weight of the evidence. In their second assignment of error, appellants argue the trial court's finding the children could not or should not be placed with them within a reasonable time was against the manifest weight of the evidence.
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 15} Pursuant to R.C. 2151.353, when a child is adjudicated an abused, neglected, or dependent child, a trial court may commit the child to the permanent custody of a children's services agency if the court determines the child cannot be placed with one of her parents within a reasonable time or should not be placed with either parent, and also determines permanent commitment is in the best interest of the child. If the child cannot be placed with either of her parents within a reasonable time, or should not be placed with either, if no suitable member of the child's extended family or suitable non-relative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the court should commit the child to the permanent custody of the agency, R.C. 2151.412.
{¶ 16} At the hearing held pursuant to R.C. 2151.414 the court may grant permanent custody of the child to an agency if the court determines by clear and convincing evidence it is in the best interest of the child to grant permanent custody, and: if the child is not abandoned and the child cannot be placed with either parent within a reasonable time or should not be placed with the parents; the child is abandoned, which means a parent has failed to visit or maintain contact with the child for more than ninety days [R.C. 2151.011]; or the child has been in the temporary custody of the agency for twelve or more months in a consecutive twenty-two month period ending after March 18, 1999.
{¶ 17} R.C. 2151.414 (D) sets forth the factors a trial court should look to in determining the best interest of the child. The factors are:
{¶ 18} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
{¶ 19} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
{¶ 20} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
{¶ 21} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
{¶ 22} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
{¶ 23} R.C. 2151.414 (E) sets forth various factors the court must use in determining by clear and convincing evidence the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Those factors include, inter alia, that despite reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that caused the child to be removed from the home, the parent has failed continuously and repeatedly to substantially remedy the conditions. The court should consider whether the parent used medical, psychiatric, psychological, and other social and rehabilitative services and resources made available to the parent for the purpose of changing the parental conduct. Another factor is whether chronic mental illness, emotional illness, or mental retardation, physical disability, or chemical dependency is so severe it makes the parent unable to provide an adequate permanent home for the child at the present time and within one year after the court holds the hearing on the request for permanent custody.
 {¶ 24} During the evidentiary hearing, TCDJFS presented the testimony of Tammy Maney, the Director at the Carroll Hills School, an MRDD facility in Carroll County, Ohio, to testify regarding her involvement with the children. Ms. Maney indicated that evaluations were done on the children in September and November of 2003. At the time of the first evaluation, Kitana was five and one-half years old. She was unable to identify colors, had a poor attention span, could not recognize her own printed name, and could not count. At that time, Kitana was functioning at a three-year old level regarding her fine motor skills. (T. at 7). At the time of the hearing, after six months in the care of the foster parents, Kitana was functioning at a five year, six-month level concerning her fine motor skills.
 {¶ 25} With regard to Sonya, Ms. Maney testified that at the beginning of the year she was bouncing off the walls at school and was difficult to understand Additionally, Sonya has made significant strides in overcoming developmental delays that were present at the time of her placement at Carroll Hills School. (T. at 12-13).
 {¶ 26} Alice Cooper, the foster mother for the children, testified regarding their placement progress in her home. Ms. Cooper testified the children were placed into her home on May 3, 2003. At that time, all three children were wearing twelve-month age clothing, despite the fact they were ages 2, 3, and 5 years respectively. (T. at 62). All three children were still wearing diapers. Behaviorally, Charity was withdrawn, and the other two children acted like wild animals. (T. at 64). Further, the children ate with their hands rather than utensils, and one was even seen to eat directly off the plate with her face.
 {¶ 27} Ms. Cooper testified regarding serious health problems for Charity. At the time of her placement to Ms. Cooper's home, Charity exhibited a serious odor that caused the foster parent to become nauseous upon coming close to her. (T. at 68). Upon further investigation by medical personnel, the presence of a severe, chronic ear infection was discovered. This problem did not resolve itself through a number of medical interventions. Eventually her doctors utilized a Broviac catheter. This medical device is a line inserted into the child's shoulder, directly into a major artery which allows for the direct administration of antibiotic medication into her heart. After consultation with a disease specialist at Children's Hospital in Akron, it was determined that Charity suffered from a serious staph infection. (T. at 70-71). The care and use of this catheter required much training on the part of her foster parents. Completely sterile conditions were required. It was necessary for this catheter to be inserted for periods of time on two occasions.
 {¶ 28} The infection continued and Charity suffered much pain. The use of the Broviac catheter created a very fragile medication situation. Mrs. Cooper further testified regarding potentially fatal complications from the catheter if it is dropped or a hole developed in the line. (T. at 74). Based upon her comprehension of the child's medical problem, it was likely she would have reoccurring staph infections over the course of her childhood, and the same could be triggered by something as simple as a cold.
 {¶ 29} Mrs. Cooper further testified regarding medical problems with Kitana. Mrs. Cooper testified that Kitana's eyes were 75% out of alignment. (T. at 77). Mrs. Cooper indicated that this problem could have been resolved prior to placement in foster care with Kitana's consistently wearing eyeglasses over a period of time. Ultimately, Kitana's eye problems required surgery to correct. (T. at 77). Mrs. Cooper testified that all three children now are toilet trained, drink from cups, and generally were considerably improved in all aspects of their behavior and development. (T. at 78).
 {¶ 30} Debbie Whitney, an employee of Job and Family Services who supervised visits between the parents and the children and also provided parent education, testified regarding involvement with the family. Parental education was provided between November 2002 and February 2003. The parents were ultimately able to complete the parent education program. (T. at 114). Mrs. Whitney had supervised all visitations between the parents and the children from the time of their removal to and including the time of the permanent custody hearing. Mrs. Whitney testified regarding on-going hygiene problems with the parents. During these visits, the parents required much instruction and direction concerning basic parental duties. They demonstrated no ability to direct or control the behavior of their children. Despite all of the instructions given to the parents during the visits, there was no noticeable improvement in any of the areas of concern. (T. at 118).
 {¶ 31} On-going case manager, Elizabeth Wanosik, testified regarding her involvement with the family. In her opinion, every imaginable service available to assist the family in appropriately raising their children had already been offered and utilized by the appellants. (Tr. at 149-150).
 {¶ 32} Psychological evaluations were completed for the appellants less than one week before the permanent custody hearing in January 2004, by Dr. Rajendra K. Misra, Ph.D. The diagnosis for Mrs. Felgenhauer includes generalized anxiety, border line intelligence, anti-social and paranoid behavior, and a distortion of reality. On a functioning level GAF scale of 1-100, she scored 37, which indicates major problems in several areas. Her prognosis is guarded at best and hindered by her limited intelligence. Dr. Misra further recommended she be treated by a psychiatrist.
 {¶ 33} The diagnosis for Mr. Felgenhauer is similar to that of Mrs. Felgenhauer. He also has limited intelligence with GAF of 31 out of 100.
 {¶ 34} Additional recommendations from Dr. Misra's evaluation indicated that an improvement in appellants' mental health conditions would take intensive, consistent treatment over a period of at least one year. (T. at 178).
 {¶ 35} Mrs. Felgenhauer testified that she would do everything necessary to have her children returned to her. Appellant Michael Felgenhauer also testified that he was willing to do whatever it takes to have the children returned. The appellants further provided several witnesses to testify as to their interaction with the children, their house cleaning habits, and their attempts to take the children to medical appointments.
 {¶ 36} Based on the foregoing, the trial court found that the parents demonstrated a lack of commitment towards the children and further failed to provide an adequate home for the children and could not do so within one year. (February 27, 2004, Judgment Entry at 4).
 {¶ 37} Based on the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that the children could not or should not be placed with appellants within a reasonable time.
 {¶ 38} We have reviewed the record, and we find the trial court's findings are supported by clear and convincing evidence going to each element.
 {¶ 39} We find the trial court did not err in terminating appellants' parental rights, and in granting permanent custody of the children to the Department of Job and Family Services. Accordingly, appellants' assignments of error are overruled.
 {¶ 40} For the foregoing reasons, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, Ohio, is affirmed. Costs to appellants.